**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. ____________________
**10-CV-80340-MARRA/JOHNSON**

FILED by GM D.C.
ELECTRONIC
March 3, 2010
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. A SINGLE FAMILY RESIDENCE LOCATED AT 3485 LAGO DE TALAVERA, LAKE WORTH, FL 33467, PARCEL CONTROL NUMBER 00-42-44-19-09-000-0290, INCLUDING THE APPURTENANCES THERETO AND THE IMPROVEMENTS THEREON,

2. A SINGLE FAMILY RESIDENCE LOCATED AT 3493 LAGO DE TALAVERA , LAKE WORTH, FL 33467, PARCEL CONTROL NUMBER 00-42-44-19-09-000-0300, INCLUDING THE APPURTENANCES THERETO AND THE IMPROVEMENTS THEREON, and

3. A SINGLE FAMILY RESIDENCE LOCATED AT 3574 LAGO DE TALAVERA, LAKE WORTH, FL 33467, PARCEL CONTROL NUMBER 00-42-44-19-09-000-0770, INCLUDING THE APPURTENANCES THERETO AND THE IMPROVEMENTS THEREON,

Defendants.
_______________________________________________/

**VERIFIED COMPLAINT FOR FORFEITURE IN REM**

The United States files this Verified Complaint for Forfeiture In Rem and alleges that:

1. This is a civil action for forfeiture in rem against the above-three pieces of real estate, including their appurtenances and improvements thereon, located in the Southern District of Florida in Palm Beach County.

2. This Court has jurisdiction over this matter pursuant to Title 28 U.S.C.§§1345 and 1355.

3. The Court has venue pursuant to Title 28, United States Code, Section 1395(b), in that the defendant property is located within the Southern District of Florida. During the pendency of these proceedings, and because it is real property, the defendant property will remain within the Southern District of Florida and the jurisdiction of this Court.

4. The defendant property has not been seized, as provided for in 18 U.S.C. §985 (b)(1)(A), but is located within this district and within the jurisdiction of the Court. The property will be posted with a notice of the complaint, in accordance with 18 U.S.C. §§ 985 (c)(1)(B)&(c)(3).

5. The defendant property is forfeitable pursuant to Title 18 U.S.C. §§ 981(a)(1)(C) as real property which constitutes or is derived from proceeds traceable to a violation of Title 21 U.S.C. §841, et seq., a specified unlawful activity as defined in Title 18, U.S.C.§1956(c)(7) and/or §1961(1). Also the defendant property is forfeitable under Title 21, U.S.C. § 881(a)(6), as proceeds traceable to a drug exchange, etc. Lastly, the defendant property is forfeitable pursuant to Title 18, U.S.C. 981(a)(1)(A), because the pieces of real property were involved in financial transaction involving proceeds, greater than $10,000.00, derived from specified unlawful activity, in violation of Title 18 U.S.C. 1957.

**DEFENDANT PROPERTY NO. 1**

6. On or about January 2, 2009, GEORGE deposited $269,100 in currency into the South Florida Pain bank account at Bank of America. On this same date, GEORGE caused a

wire transfer for $260,000 to be sent from the South Florida Pain bank account at Bank of America to GEORGE's personal checking account at Bank of America.

7. On January 12, 2009, GEORGE deposited $200,000 in currency into the South Florida Pain bank account at Bank of America. On this same date, GEORGE caused a wire transfer for $200,000 to be sent from the South Florida Pain bank account at Bank of America to GEORGE's personal checking account at Bank of America.

8. On or about January 13, 2009, GEORGE caused a wire transfer for $482,067.25 to be sent from his personal checking account at Bank of America, to an account in the name of Coralee G. Penebad P.A. Trust Account at Great Florida Bank. The investigation determined that the Coralee G. Penebad law firm was responsible for the closing relating to the purchase of GEORGE's personal residence located at 3485 Lago de Talavera Drive, Wellington, FL. A review of Palm Beach County Clerk and Comptroller's Office public records reveals that on or about January 20, 2009 a Warranty Deed was recorded reflecting the sale and transfer of the above listed property to GEORGE for consideration of $500,000. A further review of the records revealed that no liens or mortgages were recorded against the property indicating that the $500,000 purchase price was paid in full on or before the date of closing.

**DEFENDANT PROPERTY NO. 2 AND 3**

9. On or about August 28, 2009, American Pain issued check #2909 payable to South Florida Pain for $415,000. This check was issued from the American Pain Operating Account at Bank of America. On or about September 8, 2009, GEORGE deposited check #2909 into the South Florida Pain account at SunTrust Bank. On or about September 11, 2009, GEORGE withdrew $415,000 from the South Florida Pain SunTrust account and deposited

$415,000 into GEORGE's personal account at SunTrust Bank.

10. On or about September 18, 2009, American Pain issued check #2936 payable to South Florida Pain for $300,000. This check was issued from the American Pain Operating Account at Bank of America. On this same date, GEORGE deposited check #2936 into the South Florida Pain account at SunTrust Bank. On or about September 23, 2009, GEORGE withdrew $350,000 from the South Florida Pain SunTrust account and deposited $350,000 into GEORGE's personal account at SunTrust Bank.

11. On or about September 25, 2009, GEORGE opened the two accounts at SunTrust Bank. The two accounts are; 3493 Lago De Talavera, LLC, Account #1000101794427 and 3574 Lago De Talavera, LLC, Account #1000101794419. Based on a review of the records obtained from SunTrust Bank, on or about September 25, 2009, GEORGE withdrew $430,000 from his personal account at SunTrust Bank. GEORGE then deposited $245,900 into the 3493 Lago De Talavera, LLC Account #1000101794427and he deposited $184,100 into the 3574 Lago De Talavera, LLC, Account #1000101794419. Both deposits funded the opening of each account.

12. A review of the Palm Beach County Clerk and Comptrollers Office records revealed that on or about December 4, 2009, GEORGE, through the two corporations known as 3493 Lago De Talavera, LLC and 3574 Lago De Talavera, LLC purchased two residences. One residence located at 3493 Lago De Talavera, Wellington, FL was purchased for $240,000. The other residence located at 3574 Lago De Talavera was purchased for $180,000. The deeds recording these purchases were filed on or about December 16, 2009. No liens or mortgages were recorded on either property.

13. Based on the analysis of the flow of funds as mentioned in paragraphs 9 -11 of

this complaint, the funds used to purchase the above two real properties, [2 &3] emanated from the operation of American Pain

14. For the past approximate 14 months, a criminal investigation has been ongoing as to alleged criminal offenses conducted by; Christopher GEORGE (hereinafter GEORGE), and others, particularly regarding the operation of his pain clinics, and criminal violations under Title 21 U.S.C. Section 841(a)(1), that is, illegal distribution of a controlled substance; and money laundering offenses, engaging in financial transaction involving proceeds, greater than $10,000.00, derived from specified unlawful activity, in violation of Title 18 U.S.C. 1957.

15. From at least 2008 through the present, GEORGE has been the true owner of South Florida Pain, LLC (hereinafter South Florida Pain) and American Pain (hereinafter American Pain). American Pain was previously also known as South Florida Pain, and was located at several locations in Broward County, Florida. American Pain is owned and operated by GEORGE, however, GEORGE has utilized "straw owners" BAUMHOFF and Denise HAGGERTY (hereinafter HAGGERTY) to conceal his ownership of American Pain. HAGGERTY is GEORGE's mother.

16. State of Florida Corporate records show GEORGE established South Florida Pain on January 22, 2008. GEORGE was listed on the Articles of Incorporation for South Florida Pain as President, Manager, and Registered Agent. South Florida Pain was temporarily inactive and was reinstated by GEORGE as an active corporation on September 29, 2009. With the reactivation, the principle address for South Florida Pain was established as being located at 3485 Lago de Talavera, Wellington, FL., GEORGE's residence, now defendant property no. 1.

17. Florida Corporate records show American Pain was incorporated in the State of Florida on November 4, 2008. The original recorded Articles of Incorporation identified Ethan BAUMHOFF, as the Registered Agent and Manager of American Pain. On June 1, 2009, an Amended 2009 Annual Report for American Pain was filed wherein Dianna PAVNICK (the girlfriend of GEORGE) was added as a manager of American Pain. On June 8, 2009, another amendment to the 2009 American Pain annual report was filed wherein PAVNICK was removed as a manager of American Pain. On September 17, 2009, another amendment was filed with the state of Florida wherein David Townsend was added as a manager of American Pain and BAUMHOFF was removed as a manager. On September 18, 2009, another amendment was filed with the state of Florida wherein David Townsend was added as the Registered Agent of American Pain and BAUMHOFF was removed as the Registered Agent. On September 28, 2009, another amendment was filed with the state of Florida wherein Denise HAGGERTY was added as the Manager and Registered Agent of American Pain and David Townsend was removed. This was the last filing for American Pain. At no time was GEORGE listed on any of the public corporate documents as being involved in American Pain.

18. State of Florida Corporate Records show that on September 24, 2009, GEORGE established **3493 Lago De Talavera, LLC** and **3574 Lago De Talavera, LLC,** as Florida limited liability corporations. The articles of Incorporation for both businesses list Chris P. GEORGE as the Manager and Registered Agent and list the mailing address as 3485 Lago De Talavera, Wellington, FL. This is the known residence for GEORGE.

19. South Florida Pain and American Pain maintained physical locations in Broward and Palm Beach counties where they operated "Pain Management Clinics". Some of the

"patients" visiting GEORGE's pain clinics are from the local area, many of the "patients" are brought to South Florida from other states, including Kentucky, Ohio, and Tennessee to obtain prescriptions and/or narcotics (Oxycodone). Many of these "patients" from outside the state of Florida, are "sponsored" by a "recruiter" who provides money for these patients for travel expenses, doctor's visits, and the cost to obtain Oxycodone. Typically, these patients return to their home state and provide the sponsor with half of the narcotics obtained in Florida. The patients are allowed to keep a portion of the Oxycodone for personal consumption or sale. Currently, a 30-milligram Oxycodone tablet can be purchased in South Florida for approximately $1.00 to $5.00 per pill and sold in Kentucky for approximately $20.00 to $40.00 per pill.

20. These "patients" seek out pain clinics that are known to prescribe large amounts of pain medication without legitimate medical purpose with no or only a minimal-medical examination. These clinics, also known in street terms as "pill mills," do not accept private insurance, Medicare, Medicaid, and payment is approximately 90% in **cash,** and some credit cards. The "pill mills" are generally more sophisticated than traditional street level narcotics distributors, and the businesses they have established to dispense these controlled substances to addicts have a facade that includes legitimate-looking store fronts, "examining physicians", certain procedures they follow to outwardly appear to comply with the applicable laws (including some medical "requirements" such as an MRI).

21. Throughout 2009, American Pain has had five primary physicians working full-time out of its clinic. These doctors have been identified as Dr. Beau BOSHERS (hereinafter BOSHERS), Dr. Jacobo DRESZER (hereinafter J DRESZER), Dr. Cynthia CADET (hereinafter CADET), Dr. Michael ARUTA (hereinafter ARUTA), and Dr. Roni DRESZER (hereinafter R

DRESZER).

22. DEA records show that for 2009, 469,578 Oxycodone pills were ordered on behalf of BOSHERS; 439,599 Oxycodone pills were ordered on behalf of DRESZER; 438,759 Oxycodone pills were ordered on behalf of CADET; 418,574 Oxycodone pills were ordered on behalf of ARUTA; and 401,200 Oxycodone pills were ordered on behalf of R DRESZER. These records indicate that that through the above named doctors; American Pain obtained 2,167,710 Oxycodone pills in 2009. This figure does not include Oxycodone prescriptions written by American Pain doctors, which were not dispensed directly from American Pain.

23. According to statistics released on January 15, 2010 by the DEA Office of Diversion Control, Pharmaceutical Investigations Section, all five doctors working out of American Pain are listed among the nation's top 20 practitioner purchasers of Oxycodone for the period from January 1, 2009, through September 30, 2009. BOSHERS is ranked 5th; J DRESZER is ranked 8th; CADET is ranked 12th; ARUTA is ranked 16th; and R DRESZER is ranked 20th in the nation.

24. There have been allegations that the doctors at American Pain are paid based on the number of "patients" they process. We believe this allegation to be true based on a review of various bank records of American Pain. In reviewing the bank records, it was determined that the doctors each appear to be treated as contractors and not employees of American Pain. We base this determination partly on the fact that each doctor was paid on a weekly basis from the American Pain Operating Account(s) and was not paid from the American Pain Payroll Account(s). Additionally, because the weekly payments to the doctors are in varying amounts, it is apparent that the doctors are not paid a set salary for their services. The following table

summarizes of the payments made by or from American Pain to each doctor during 2009.

| Name of Doctor | Total Payments Received in 2009 | Weekly Range of Payments (Lowest and Highest) |
|---|---|---|
| BOSHERS | $1,225,775 | $12,450 to $37,200 |
| R DRESZER | $1,049,032 | $10,275 to $34,350 |
| ARUTA | $1,031,975 | $12,000 to $39,675 |
| J DRESZER | $968,975 | $10,575 to $31,050 |
| CADET | $861,550 | $5,850 to $44,850 |

25. On or about August 29, 2008, under law enforcement direction and surveillance, a cooperating source (hereinafter CS1) met with GEORGE at a restaurant in Fort Lauderdale, Florida. CS1 was equipped with a recording device for the meeting and the conversations were consensually recorded. The conversation concerned laundering proceeds derived from GEORGE's business. During this consensually monitored meeting, CS1 and GEORGE discussed CS1's ability to open accounts in fictitious names, launder money through fictitious businesses, funnel money through numerous wire transfers, and send laundered proceeds to offshore banks.

26. On or about March 5, 2009, CS1, pursuant to previous meetings and telephone discussions with GEORGE, introduced an undercover officer (hereinafter UC1) to BAUMHOFF, who was listed "on-paper" as the owner of American Pain. UC1 consensually recorded the meeting between UC1, CS1, and BAUMHOFF. UC1 and BAUMHOFF discussed the large amounts of money that American Pain received on a daily basis. BAUMHOFF told UC1 that "the company (referring to American Pain) is in my name (...) but (...) I'm a straw owner for the company." UC1 explained to BAUMHOFF that he was in the business of laundering money, as well as hiding large amounts of currency from the government. BAUMHOFF expressed a

profound interest in UC1's services by telling UC1 that he had thousands of dollars that needed to be hidden, but also offered that GEORGE has much more, referring to approximately $40 million in assets that needed to be laundered.

27. On March 18, 2009, UC1 and BAUMHOFF met and discussed money laundering methods. BAUMHOFF informed UC1 that he was carrying approximately $50,000.00 in cash in his backpack that reflected one day of income from the American Pain Clinic. BAUMHOFF mentioned that the figure could double when the clinic was "dispensing" (meaning that the clinic was also filling the pills prescribed by the doctors, not just issuing prescriptions). BAUMHOFF stated that he was going to make a bank night deposit of the $50,000.00 at the conclusion of the meeting. BAUMHOFF informed UC1 that there were approximately five doctors working full-time at American Pain and that approximately 250 people per day came from South Carolina, Kentucky, and Ohio to buy "Roxy's" (meaning Roxicodone, a type of Oxycodone, which is a schedule II narcotic). **BAUMHOFF told UC1 that the people from Kentucky, Ohio, and South Carolina buy the pills (Oxycodone) at American Pain clinic for $5.00 a pill and take the pills back to their home state and sell them for $80.00 a pill**.

28. Financial documents relating to GEORGE, South Florida Pain, American Pain, and others, show that during 2009, Bank of America filed two (2) CTRs reporting a total of $469,100 in **cash** deposits into the account held in the name of South Florida Pain. During 2009, American Pain maintained bank accounts with at least three (3) different financial institutions; Regions Bank, Bank of America, and Wachovia Bank. We determined that these three banks combined, filed 147 CTRs reporting a total of $14,094,979 in cash deposits during 2009 into the American Pain accounts. Each of the CTRs filed in 2009 relating to American Pain identified

Ethan BAUMHOFF as the person conducting the deposit. GEORGE was not identified on any of the CTRs filed relating to American Pain.

29. During 2009, American Pain established operating and payroll accounts at Bank of America and Wachovia Bank. On or about January 26, 2009, American Pain established its Operating and Payroll accounts at Bank of America. Ethan BAUMHOFF was the only authorized signor on both Bank of America accounts. GEORGE was not listed or named on either Bank of America account.

30. On September 23, 2009, American Pain established its Operating and Payroll Accounts at Wachovia Bank. Both Wachovia Bank accounts listed David Townsend and GEORGE as signors on the accounts. On September 29, 2009, Denice Haggerty replaced David Townsend as a signor on the Wachovia Bank accounts. GEORGE remained as a signor on the accounts.

31. Bank account records for various accounts maintained in the names of South Florida Pain, American Pain, Executive Pain and Christopher GEORGE show the interrelationships of these businesses and further revealed that GEORGE is the true owner/benefactor of the businesses and maintains control over the funds generated and deposited by the businesses.

WHEREFORE, Plaintiff, United States of America requests, that any and all persons having any claim to the defendants be directed to file and serve their verified claims and answers as required by Rule G(5) of the Supplemental Rules for Certain Admiralty and Maritime Claims, or suffer default thereof, and further requests that the Court declare the defendant properties

condemned and forfeit to the United States of America, and that Plaintiff have such other and further relief as may be just and proper.

JEFFREY H. SLOMAN
UNITED STATES ATTORNEY

BY: s/William H. Beckerleg, Jr.
WILLIAM H. BECKERLEG, JR.
ASSISTANT U. S. ATTORNEY
500 East Broward Boulevard, Suite 700
Fort Lauderdale, Florida 33394
Telephone No. (954) 356-7314, ext. 3614
Telefax No. (954) 356-7180
E-Mail: William.H.Beckerleg@usdoj.gov
Bar No. A5500074

**VERIFICATION**

Pursuant to Title 28, United States Code, Section 1746, I declare under penalty of perjury that, I, Richard Serrano, Special Agent, Internal Revenue Service, U.S. Department of Treasury, have read the foregoing Complaint for Forfeiture In Rem and state that the contents are true to the best of my knowledge and belief.

RICHARD SERRANO